Case No. 16-5214, Gail Jackson Allred III v. Linda L. Allred III v. United States of America, pardon me, I'm not sure if she was here or if she came in at the first time, Taylor. Good morning, members of the panel. Pardon me. The change of temperature I think is causing a little bit of change in my voice too. I do represent the plaintiff appellants. It's Fred and Brenda Allred. I would like to reserve three minutes for rebuttal, please. You may. Please proceed. Okay. Thank you, Your Honor. This case is I think one of the few cases I've ever had in the tax field where I could truly say that all the equities, I think, are on the side of the plaintiffs and the appellants. But dealing with all of the technicalities is like walking through a minefield, it seemed to me. But fortunately, I think that the strongest argument in this case is the mitigation provisions, which are generally an equitable remedy, one of the few equitable remedies contained in the Internal Revenue Code. But that is a secondary part of my argument. Essentially, the background is that there was long litigation between Fred Allred, who owned 50% of a Tennessee LLC, Mr. Fred Bain owned the other 50%. Mr. Bain passed away in February of 2007. The operating agreement contained what Mr. Allred and the advisors for the LLC thought was an unrestricted right to purchase the interests of the seized estate. And so we exercised that right. There was some language in the operating agreement that turned out to be inconclusive, according to the trial court judge. But starting with the time that Mr. Bain died, the LLC returns were prepared on the basis of allocating 100% of the income to the Allreds, or Mr. Allred, and then none of the income to the Bain estate. The individuals filed their returns consistently with that. That is, the Allreds reported 100% of the income for 2007, but a partial year, of course. For the rest of the years up until litigation was concluded, they reported 100% for the entire year. The Bain estate filed consistently also, which reported zero. The litigation went on, it went up to the Tennessee Court of Appeals, it went back down, went back up a second time, and ultimately the decision was in favor of the Bain estate, that it had continued to own a 50% interest in the LLC for the entire period of time. Mr. Taylor, we understand. We get it, and we get the equities. But now we've got to deal with the reality of the Internal Revenue Code. So we've got two questions, I think. One is the physical delivery rule, which it doesn't seem like you can meet. So then you have to go to mitigation, which you said was your secondary argument. Under mitigation, you've got three different elements, and it doesn't look like you meet the second one. So this is just me, I'm not speaking for the panel, but at least I'm suggesting that you concentrate, you drill right down onto those two things because you've only got probably ten minutes left. Yes, I understand, Your Honor. I'm always uncertain as to how much background we've provided. But in this instance, on the fiscal delivery rule, there is no proof that it would be controlling, and it's by reason of the actions of the United States. We know we can establish when the return, the amended return, was placed in the mail. It was placed on October 10. October 15 was a cutoff date. Are you establishing that by extrinsic evidence? Yes, Your Honor. Isn't that generally forbidden in this context? Well, it is only in the sense of a prelude to the next point I'm getting at, which is the statute says now the controlling date is the U.S. postmark, and that is what we don't have. We don't have evidence of the postmark. And, Your Honor, the United States filed a motion for extension of time. We didn't oppose it, but included in that the fact that the administrative file should clear up this issue. It should show, is it postmarked before October 15 or afterwards? And so then, but it has never been mentioned again by the United States. I mention it every time I get a chance. So, Your Honor, I don't... Did you FOIA them? Did you take any discovery steps to get the envelope, assuming the envelope rests someplace and that Mr. Schuman's lying to you? No, there has not been a lie, Your Honor. They just have not mentioned it again. Yes, I did attempt to get it informally, but the court granted, the district court granted the motion to dismiss before we ever got very far with the discovery. So, at this point, we have... Did you ask for additional time? Did you file a request that says what discovery you were undertaking, you needed to undertake, and why it was important? I've forgotten the rule number that you have to follow to do that, because they changed it on me, but... I think, Your Honor, that's in the summary judgment statute. You can follow what is 56F, I believe, and you can get additional time when it says we can't. Did you do any of that? Your Honor, I requested it. That isn't what the rule says. Discovery is not calling up somebody and say, hey, Joe, will you help me out here and give me something. That doesn't help. Well, Your Honor, we didn't get that far. We put down a discovery, or I think the district court issued a scheduling order, and then... Let's assume that that envelope exists within the IRS someplace, and that there's a postmark on it. It's your obligation to show what that postmark says. It's your burden. And I can't figure out how you can meet that burden when you didn't take any of the formal steps that the rules set forth in order to get that envelope. Your Honor, it may have been error on my part. So what do you want us to do about that? It seemed that it was premature to send it back, to reverse the district court, send it back so that we could complete discovery to determine the truth. Did you ask to complete discovery? Did you ask for reconsideration of the decision below? Did you actually seek more time to do discovery? Did you file a motion that says they failed to provide discovery to you and you need to enforce it? Did you do any of the things that have to happen in litigation? I recited all of this in great detail in my responsive memorandum to the court, Your Honor. I did not pursue formal discovery, nor did I file a formal motion to reconsider. So then what's the basis of us sending it back to let you pursue that discovery, which may or may not show what this postmark says? It's because the U.S. has control of it, Your Honor, and they brought up the issue first. The other side that has what you want always has control of what you want. That's why you used discovery. Yes, Your Honor. Perhaps the court is correct. Perhaps that was error on my part. But I did raise that question repeatedly at the lower court level. Let's assume that you haven't done what you needed to do to be able to make your discovery argument to us. So then I think you're just left with mitigation. But it doesn't look like you meet any of the, at least the second element for sure, of mitigation because you can't show that there's a double payment here. This case looked better when you thought both the states had paid. And then you found out the other state hadn't paid because the IRS rejected their attempt to pay too. So now you're back to seemingly not satisfying the mitigation requirements. So why am I reading this incorrectly? Well, Your Honor, may I just start with the consistent reporting requirement under 6222. It has to do with partnership filing. It says that the partners must report the items on their individual tax returns consistent with what the LLC or the partnership return reports. In this instance, they both did it initially. And then with their amended return, they both did it the same way. That is, the Bains and the Allreds, my clients, filed consistent with the return. So that's one step, Your Honor. The service accepted the amended LLC return, and that shows my clients with only 50% of the income and the Bain estate with 50% of the income. The Bain estate, consistent with their requirement, they filed an amended return, paid the tax on that. Again, that was why I filed a motion to let me bring them in as third-party defendants so we could get part of that issue resolved and also part to protect them because the Bains were exposed under the six-year statute. The IRS generally is a court— How could they be exposed to anything? You paid their taxes for them. What's their jeopardy? Well, Your Honor, the jeopardy was at that point in time that the IRS could assess them despite having earlier rejected the return under the six-year statute. If there's more than 25% of income omitted from a return— This looks to me like a fight between the two partners. It looks to me like you paid their share of the taxes. You can't get it back from the government because of all of these rules, regulations, and case law that exist. So isn't this really a claim against them for, I don't know, unjust enrichment or something that you paid their share of the taxes and they owe you back? Isn't that what this comes down to? Your Honor, that is an alternative argument. That's why I wanted to bring them into court so we could resolve it all before the district court. I've got other things I can add, but I thought maybe the court's pondering that response. I'm even trying to remember, did you appeal the failure to allow the bringing of a third-party complaint? I don't even know what the federal court jurisdiction would be in an unjust enrichment theory between the two partners. I don't see how you can do anything that you've tried to do here. And I don't mean this critically, but with all due respect, you're a tax lawyer, right? You prepare tax returns. I don't prepare tax returns, thank goodness. Oh, okay. Sorry. And no offense to any persons who do that in court. They have only our sympathy. Your Honor, I understand. You know, this is the one era, the biggest era that we have on my side, and it tells you sometimes you should not. I've been practicing law for 45 years. Up until the last five to 10 years, I would personally walk things to the post office and get them stamped. I just didn't trust the folks I worked with. Not that I distrust them, I just wanted to be sure. I worked with someone who was so careful about everything. She helped me keep up with this on a daily basis. And I thought when I said, okay, let's get it out in certified mailing today, that she would get the receipt stamped. She did not. And that is a fault that I have to deal with. But, Your Honor, every other single equity is in our favor. There is no denial but that they already overpaid their taxes because the 2007 return, 8, 10, 11, 12, 13 were all approved. Refunds came back on that. We have the one year, and because the IRS elected to not Go back to the basics. Yes, sir. There's a little problem with sovereign immunity. You can't sue the government unless the government is consented to being sued. Yes, Your Honor. The government is consented to being sued in the Internal Revenue Code and has set forth a number of these provisions, including what they think is this equitable one under this mitigation theory. Yes, Your Honor. If you don't meet any of those conditions, correctly or incorrectly, equitably or inequitably, we're trying to figure out how we have the authority to grant the relief that you're seeking in this environment. Well, at this point, it does seem, it seems to me, Your Honor, respectfully, that there is this hidden issue of whether we were timely. We did timely file. As long as you file a tax refund suit within two years after the denial of the claim for refund, then that's timely filing. Even the government. How do we, just in, maybe this is fanciful, but how do we know whether that return sat in that office building mailbox for five days before it actually got to the post office and got postmarked? We don't know that. We won't know without the envelope, Your Honor. Well, that's right, but it's your burden. Well, I think I got cut off, Your Honor. I don't see that I had a chance at that point. The way the court, again, we had the scheduling order and then the opinion came down from the district court and it denied the motion to me and it found actually that suit was untimely filed. I remind this court that the defendant, United States, said on page 41 of its brief that suit was timely instituted on this refund claim. It then said that plaintiff's bid for relief under mitigation provisions is arguably premature. It says it then acknowledges that the proper construction of code section 1311A3B is open to question. Now, even the other side is admitting that the district court erred on that part. Okay, we've given you some things to think about, so we're going to hear from the government and then you can think about those things and respond if you have any additional thoughts or anything you want to say in response to the government. You'll have that during your rebuttal period. I'll do my best. Thank you. Thank you. Good morning. May it please the court. My name is John Shewan and I represent the United States. First, I'd like to note, Judge McKee, your point is correct. At this stage in the proceedings with limitations having run, the real dispute is between these parties to the LLC. It does seem to me that the government isn't being real helpful here. You're an officer of the court, right? Yes, Your Honor. Have you looked at the file? The administrative file? Yes, Your Honor. Is the envelope in there? First, I must preface by saying that we are not relying on the administrative file. It is not in the record below and it is not something that we need to support our case. But, yes, we do have an administrative file. What does it say was postmarked? Well, there is a copy. It's a scanned copy of the envelope. We don't have the original envelope in our possession at DOJ. But there is no legible postmark on that copy. So the envelope does exist? We don't know about the existence of the original physical envelope. Well, somebody scanned it from the IRS to send it to DOJ, right? Yes, and it appears to be that envelope. So is it illegible because of the smudgy way the post office put on it or because it's not clear in the scanned copy? It doesn't appear that there's a postmark on there at all. So why don't you just give them the darn thing? Well, the administrative file was not available at the outset of the case. That was the problem. Save everyone a lot of brief writing, brief reading, frankly. Cough up the scan and sort of put that conspiracy theory to rest. As you probably know, this circuit isn't doing real well with the IRS right now. You might have heard about that. Right? So if that envelope exists and if there's got to, what would be the consequence in your mind if the envelope exists and there is a postmark and it is readable and it shows that they met the timeliness requirements? What would be the consequence of that in your estimation as the representative of the United States government? Well, I think what would have happened had that been the case is the IRS would have seen that. They would have not determined it to be untimely. They would have allowed that amended return to be filed and they would have treated it in the way the taxpayer had hoped. Okay, so let's say I'm a little skeptical about I'm from the government, so trust us, we would have done it correctly. So what do we do if today the envelope exists, there is a postmark, it is readable, and it shows that it was deposited timely? What would you suggest be the way that this case proceeds? Well, I think as you mentioned, the burden was on the taxpayer to seek evidence at the proper time, to seek jurisdictional discovery or to seek it any other way. If it was not available at that time, then the case would need to proceed. Again, what we're getting back to here, though, is the only reason why the postmark on the original envelope is important is because the taxpayers did not take the very simple and easy step of taking it to the post office, getting the postmark attached then, and getting the receipt for certified mail postmarked as well. If they had done either one of those two things, that would have been sufficient, and we wouldn't be here, we wouldn't have all this briefing, and this case would not be before you, Your Honor. So I don't think you can place that burden on... Well, if you had gotten the administrative file on a timely basis and when you said you were going to, you wanted more time to wait for it, and you were granted more time, and then you didn't turn it over, if you had gotten it expeditiously and turned it over and had said it was filed timely, we wouldn't be here either, would we? Well, Your Honor, I personally do not know when exactly the administrative file was turned over to trial counsel. It was another attorney who handled that. But in any event, the taxpayer had the burden of seeking that. It was... If there had been... I can tell you that if there had been a postmark in the file and the trial attorney for the government had seen that and that the postmark was timely, he would have brought that to the court's attention. That's not what happened here. The administrative file was not available. When it finally did become available, it appeared that what we think is a scan of the envelope does not have a postmark of any kind on it. Did it become available after the district court's decision in this case? Again, Your Honor, I don't know exactly when the administrative file became available. That would seem to be an important thing to know for purposes of what we're trying to do right now. I mean, if it became available before the district court's decision and the IRS did not provide the administrative file pursuant to what appeared to have been its representations to Mr. Taylor, then that would just seem to be a problem of some kind. I don't know how it connects with the rules exactly. Well, again, Your Honor, the copy that we have, it supports the government's case. I know, but we're just, you know, I mean, the problem is we have to just, I mean, no offense to you, sir, at all, but, I mean, we can't make that judgment ourselves. And, boy, if this file turned up before the district court's decision, that would seem to be a very regrettable omission by the government to provide it to everyone so that, you know, we're not having this conversation. Well, again, it was a motion to dismiss. That's what the district court had to decide. And it was the burden for the taxpayers to allege jurisdiction and to take any discovery that they needed to take in order to prove jurisdiction. The burden was on them. Let's assume for a second that the way the case is currently postured, they don't meet their burden. Would you be willing, as a representative of the government, to provide this, whatever you have, provide it to Mr. Taylor? And if Mr. Taylor can convince the district court of the merits of his position, based on whatever you provide him, then the normal way, as I understand it, is the district court contacts us and says that if we allow the proceeding to continue in the district court, that the district court intends to rule in such a way if we send it back to him, and then it comes out however it comes out. If when Mr. Taylor gets whatever you send him, he can't persuade the district court to pursue something differently, then we rule. I don't know how articulately that all came out, but do you at least get sort of the gist of what I'm asking about? And I'm not representing what the other two judges on this panel think whatsoever. Well, certainly, Your Honor, we'll comply with whatever the court wishes to do in this case. However, I don't think that the district court made any error. There are no grounds for remand in this case. The district court properly applied the law and properly placed the burden upon the taxpayers where it should have been. To boil this down and to build on Judge McKeague's point, let me just say I'm not accusing the IRS of any misfeasance in this litigation. But if that file became available before the district court entered judgment and the IRS did not turn it over, it would seem to be as an officer of the court, the lawyer in the district court had an obligation to do that. If the decision is based on a mistaken premise that's shown to be mistaken by an administrative record that the IRS at whatever point had finally gathered it and it doesn't bring that mistake to the court's attention as an officer of the court, that seems to be something an officer of the court should do. And ought not we kind of back things up here and see if there was that kind of omission in the district court? Your Honor, as an officer of the court, I am not aware of any information in the administrative record which would contradict anything that the district court has held. And I think that the district court is entitled to decide the case based on the facts that it has. And obviously all this other information is outside the record and something that was not sought by the taxpayers. We're trying to avoid situations where the district court makes mistakes because the district court wasn't provided the information that it should have been provided. And the rules change a little bit, I think, when the government is on one side of the case. You've experienced that many times. And it may be that when you provide this scanned copy, if that's the best there is and there is no postmark on it, then at that point Mr. Taylor knows he's screwed. The case is over at that point. He can no longer complain about you've got something that you're holding back from him that would help him win his case. He just loses. Can't everybody sleep a little better at night then? Maybe? Or is this just kumbaya? Well, Your Honor, I think the court's inclination is understandable. But in this situation, there were no adverse facts that the government failed to produce. And there were no discovery requests that the government did not comply with. There were no requests from the court. To boil it again, I mean, the district court ruled here based on some assumptions about what the administrative record contained or didn't contain. I mean, if the district court had reason to believe that the administrative record would contain a postmark which vindicated Mr. Taylor's position, we'd probably have a different outcome down there, one way or another. And I think our point is that if the IRS then gets the administrative record before the district court enters judgment, and the record is in fact inconsistent with the district court's apparent assumptions, then as an officer of the court, the lawyer has an obligation to provide it to the district court. And shouldn't we try to remedy that problem if there's a way we can do that? I mean, it's the government on one side here. Why not try to get to the bottom of that? Well, Your Honor, the district court did not make any findings as to the existence of administrative record or the nonexistence or what was in it or what would have been in it had it been requested or had it been presented to the court. Now, if by – I mean, don't freak out about this, but if somehow things turned out that this suit gets powered up again and the plaintiffs obtain relief, would the IRS at this point still be able to collect the – I think it was $400,000 from the other state? Or are you sort of timed out from having any remedy there? Well, the IRS did not seek payment from the base state. It turned payment away, right? Right, exactly. Yes, this was a situation where the IRS refused payment. I guess just on the other side of the equities, is the IRS going to be shorted $400,000 at this point if the plaintiff wins this case? Well, that's certainly the upshot of what the taxpayers are saying here because they – even under their theory that – I'm asking you as an attorney with the IRS. Is it your understanding that the IRS would, if the All Reds hypothetically were to ultimately prevail here, can the IRS recover the underpayment from the other state or is it not able to do that at this point in time? That would certainly be a risk. And given that the IRS has already said that it was – the amended return from the main state is untimely, I think that would certainly put the IRS at the risk of having lost on both sides and having been shorted and a windfall being given to the parties here. The reason that I was asking you if you would be voluntarily willing to do this is I can see when you go back to your office that your superiors would think the sky is falling because either then you won't be able to get the payment from the other party or we're establishing some sort of a precedent that all of a sudden the IRS will do what's right and they don't want that precedent. I'm joking there, please. You could have any number of reasons why you don't want any part of my question. So all I'm asking – I mean, the panel may order you to do this. I don't know. We'll talk about this later. I'm just asking you whether you would be willing to go back to your office and talk to your superiors and let us know within 30 days whether you're willing to turn that scanned copy over to Mr. Taylor. If you are, then at least my position is we probably ought to wait 30 days or so and see whether Mr. Taylor can actually do anything with it. But if he can't do anything with it, then we're right back to where we are right now and at least somebody's seen the envelope. Well, Your Honor, to quell the Court's concerns, and frankly I wasn't anticipating this line of questioning, but I do have copies right here. I can present them to the Court right here and to opposing counsel. There's not only a copy of the – What else you got in there? There are also some notes from an IRS official who had handled the case, and it – well, may I read it to you, Your Honor? I mean, I don't want to paraphrase it. If the question is – I mean, David, we're off the record here. So let's just go with it. Again, Your Honor, we don't believe we need this to prevail, and it's not part of the record. Stop right now before you read something. Okay. We're just making this up as we go along here, obviously. I'm not sure I'm on board on this. I understand. But let me finish. So the first question before you read is something that's not in the record, which I think should be whether Mr. Taylor objects to it. If he objects to it, then I think we certainly shouldn't do it. If he does, then maybe we will, maybe we won't. You don't object. Okay. So he's willing to have us see something. You okay? All right. I'm not sure I'm on board with this whole line of questioning, of expanding the record, considering issues that are not before us on appeal. This is more in the line of mediation, I think, by trying to get some voluntary action. This case was referred to mediation in March. Is that right? That's correct. And there was an attempt. Now, in view of all the questions today, would there be perhaps any advantage of sending it back to mediation at this point, which I might favor more than a remand to a district court, which hasn't been asked? I don't see the advantage to that, Your Honor. I think the government — Let me rephrase Judge Griffin's question for just a second. He's concerned for some legitimate reasons where all of a sudden you're reading us stuff and showing us things that nobody's ever seen. What do you think about it going back to the mediator for purposes of letting the mediator look at whatever you've got that Mr. Taylor is in agreement with him looking at? Well, Your Honor, I don't think — If you're willing to show it to us today, I'm assuming you're willing to show it to a mediator, right? Well, Your Honor, I don't think I need to show you any of this for us to prevail. I think we win on the law. I think the statute is in our favor. I think the mitigation provisions have not been met here. And I think we win just on the basis of the record as it exists right now. We got it. However, if there are any questions that this court has, I'm prepared, as an officer of the court, to provide any information. All right. I'm inclined to rule on the record and on the basis of the issues that are before us. And at this point, I'm inclined to agree with your position, by the way. Although I think the result here is harsh. And as a taxpayer, as a member of the public, I would hope that the government, you know, would give the taxpayer a break, particularly when they don't appear to owe the money. But as a judge, I rule on the issues that are properly before us, based upon the lower court record that's properly before us. I do not take testimony in court from an attorney. And I don't usually, or I don't expand the record unless there's a consent of both sides here. So, I mean, you can do whatever you want voluntarily. But it's not necessarily at my urging, that's all. But if you choose to do something voluntarily, that's your own choice. I completely understand, Your Honor. And I think you've identified a very important slippery slope here. If we go outside the record and if we look at things that could have happened or documents that could have happened. We don't try cases anew on the Court of Appeals. And I've had attorneys want to do it all the time. And I don't let them do it. Right. There's good reason we don't do it. So the bottom line is you're willing, if we have a mediator call you, you're willing to talk to them and consider turning that over, right? We will comply. Mr. Taylor, you agree with that? We will comply with any order of the Court of Appeals. All that stuff's not in the record. It's not something we have knowledge or involvement with. It's not part of our adjudicative process. Right. I guess the only thing that's in the record is your representation that there is no, there's nothing discernible by way of a postmark on that envelope. And I think Judge Griffin is right that I would suspect, speaking for the panel, that we will not take that into account in connection with anything we do here because it simply is not properly before us, as Judge Griffin correctly mentioned. Thank you, Your Honor. And if I had found something outside the record that contradicted what I was going to say in a brief, I would not have filed that brief. Fair enough. As an officer of the court, I would not have done so. We accept you. We take you at your word on that. We appreciate your indulgence here this morning. Yeah. Anything else you want to say? I think we've got it. What do you decide about the mediation? Are you agreeable to do that? I mean, to provide to the mediation office kind of what you've already agreed to provide us, I mean, I would think that might be the better procedure. Right. I think that's what I just asked you. You're willing to go do what we're talking about here with a mediator, right, if asked? We'll comply with any request from the court. Mr. Taylor, you're in agreement with that. However... Mediation? Yes, further mediation. I know you did... process, but you're the mediation attorney. I was told that the United States wanted a ruling from the Sixth Circuit. They wanted to pick your issue. Mr. Taylor, don't make their argument for them. He just said he's willing to talk to the mediator and show them the envelope. You got that? Yes, sir. Are you willing to do that? Don't say another word then. All right. If mediation is unsuccessful, the case is going to come back here, and we are going to resolve the issues that have been presented on appeal. Right. But we think, I mean, you talked sort of about the equities favored you. I think they do. We have to apply what the law says. But if they're willing to go to the mediators, present this additional documentation in the file, I think that's wonderful, and why don't we see what happens. All right. Anything else you want to tell us? No, Your Honor. I just wanted to clarify that the mediator will not be assuming any adjudicatory role, will not be deciding any facts. Right. They never do. Right. If they tell us that you all work this case out and that either Mr. Taylor has withdrawn the appeal because he knows he can't win or that you've agreed to figure out how to get the money back to him, then life is good and we don't hear from you again. Otherwise, we have to decide the case. Is that about it? Thank you, Your Honor. Okay. Anything else, Mr. Taylor? I'm a little scared to say anything else after he's gone. Yeah. Don't say another word. If I was you, I'd be very afraid. But go for it. Or not. I thought I would not have said anything in rebuttal on that one. Only this, that as far as I can tell, the Eighth Circuit, the Fourth Circuit, and the Second Circuit have all said that a liberal construction is intended by Congress. That's the way they read that. I don't think the Sixth Circuit has come out and specifically argued that. But, again, I remind it from the – Liberal construction of the Internal Revenue Code? Is that what you're talking about? Construction from the – A liberal construction of the Internal Revenue Code? Yes, Your Honor. He's talking about 1311 through 1314, the mitigation provisions. The mitigation provisions. Yes. That's the only area, I think, where taxpayers get a liberal construction. And this is all set out in my brief, so I'm not adding anything to it. But I think if you look at those, you'll see that the courts have gone pretty far out of their way to try to find a way to avoid denying relief based on a very literal wording of the statutory requirement. It only goes so far, though. Yes, Your Honor. You've seen how far we're trying to stretch this thing here, Mr. Taylor. Yes, Your Honor. To overcome things that you should have done you didn't do. Yes, Your Honor. Got it? Yes, Your Honor. All right. There's a mediation office in this building. I can't remember what floor it's on. You two got enough time to just get on there right now, see if they'll talk to you? Sure. Good. Tell them we sent you. Yeah. Yes. Yes. Tell them we asked if you were willing, and you said yes, and go present yourself. Thank you, counsel. Thank you both. And then let us know within, say, 30 days where this all stands. But send it jointly. If you guys are not in agreement, then we're not listening anymore. So send us whatever jointly you are in agreement upon. Either you've settled it, you haven't settled it, you need more time, whatever it may be, within 30 days. I understand. Thank you so much for your courtesy. Thank you.